**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANTHONY VONE CAIBY,** | : |
| **Plaintiff,** | : |
| | : |
| **v.** | :    **Case No. 2:25-cv-05179-JDW** |
| | : |
| **SIPPLE,** *et al.*, | : |
| **Defendants.** | : |

## <u>MEMORANDUM</u>

Anthony Vone Caiby has filed a *pro se* civil rights complaint based on events that occurred at SCI Phoenix. For the reasons that follow, I will dismiss all of his claims, some with prejudice and some without prejudice. For the claims that I dismiss without prejudice, I will give Mr. Caiby an opportunity to file an amended complaint with additional factual detail in an effort to state a plausible claim.

## I.    FACTUAL ALLEGATIONS

Mr. Caiby is a prisoner serving a life sentence for criminal homicide at SCI-Phoenix. On November 25, 2019, his cellmate attacked him, and he suffered multiple concussions, cuts, scrapes, abrasions, and a fractured orbital bone. The next day, he was examined in the SCI Phoenix medical triage unit, where his injuries were documented, and he was taken to Abington General Hospital for an examination and limited treatment. On November 27, 2019, he was examined at Jefferson Hospital in Philadelphia and returned to SCI Phoenix. In early January 2020, he was taken to a local eye clinic, where he was told that the laceration over his eye had healed.

Over time, Mr. Caiby's vision slowly deteriorated. In late November 2024, staff at Jefferson measured his ocular pressure at 27 in his left eye and 28 in his right.[1] He does not allege that he received a diagnosis or instructions for treatment from the staff at that time. However, at some point, Mr. Caiby was diagnosed with thyroid eye disease by an unidentified physician at Jefferson Hospital. After that, he was sent to Jefferson regularly for follow-up visits related to his diagnosed condition. He was also taken to Temple Hospital, where he received MRI studies and CT scans, although it is not clear whether these studies were related to his diagnosis of thyroid eye disease.

In February 2025, Mr. Caiby was taken to Einstein Suburban Hospital, where he was diagnosed with anemia and an iron and Vitamin B-12 deficiency. He received four blood transfusions to address these conditions and remained hospitalized. On February 23, 2025, a staff member noticed something on Mr. Caiby's right eye. He underwent an unidentified test during which he was asked to cover his left eye, at which point he learned that he was unable to see out of his right eye. He was discharged later that day and returned to SCI Phoenix, where he was briefly placed in the infirmary and then returned to his regular cell. He then experienced pain in his legs due to neuropathy and requested and received a lower bunk assignment and a cane to assist him while walking.

---

[1] Eye pressure, also called intraocular eye pressure or IOP, is a measurement of the fluid pressure inside the eye. Measured in millimeters of mercury (mmHg), 10 to 20 mmHg is considered normal. Eye pressure that is too low or too high can damage vision. https://www.aao.org/eye-health/anatomy/eye-pressure (last accessed April 28, 2026).

Mr. Caiby became ill in early March 2025 and suffered symptoms of food poisoning but did not receive treatment even though he went to sick call. On July 2, 2025, he experienced eye pain due to elevated intraocular pressure, but when he went to sick call and described his symptoms, he was neither examined nor treated. Later in July, Mr. Caiby returned to Jefferson Hospital with elevated ocular pressure and a gastrointestinal condition. He remained in the hospital for five days, then returned to SCI Phoenix, where he spent several days in the facility's infirmary. On July 28, 2025, Mr. Caiby was taken to Jefferson Einstein Montgomery Hospital for a CT study that had been ordered in November 2024. Mr. Caiby does not identify the purpose of the study or describe the results.

In July 2025, Mr. Caiby requested renewal of previously granted accommodations under the Americans with Disabilities Act, based on his diagnosed conditions of thyroid eye disease and neuropathy. Although it is not clear, it appears that the request may have been prompted by Mr. Caiby's reassignment from his job as a yard/vestibule worker to a job in the kitchen as a dishwasher. He requested an accommodation because his diagnosed conditions did not permit him to perform this job. His request for accommodation was granted. However, although he alleges that unidentified medical personnel changed his work classification to "Limited Duty GLP," he also appears to allege that his record incorrectly reflects that he refused to work, rather than that he required an accommodation to work. Mr. Caiby claims that he has been "shorted" on his pay regularly,

3

and that non-Defendant Unit Manager Olivari has acknowledged this and, at the time of the filing of the Complaint, was working to compensate Mr. Caiby for the lost wages.

Mr. Caiby was scheduled for a clinic visit at Jefferson Hospital but was not transported to the hospital for the visit. He claims that his transportation was cancelled for non-medical reasons, and that he was told by staff on the day of the visit only that a machine was broken so he could not go. The purpose of the clinic visit is not clear from the Complaint.

Mr. Caiby claims that because of the Defendants' conduct, treatment of his serious medical condition was delayed, and he has developed thyroid eye disease and related loss of vision. He asserts claims for violation of his Eighth Amendment rights and related state law claims against Mr. Sipple, who is Deputy Superintendent For Treatment, Correct Care Solutions and Wellpath LLC (two prison medical providers), and various John/Jane Doe medical staff and medical transport staff.

## II.    STANDARD OF REVIEW

Although Mr. Caiby has paid the filing fee in full, the Court has the authority to screen the Complaint pursuant to 28 U.S.C. § 1915A. *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000). Section 1915A requires "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, a judge must dismiss a complaint

or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

The same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) applies to statutory screening under Section 1915A. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Pursuant to that standard, I must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). That means I must accept the factual allegations in the Complaint as true, draw inferences in favor of the plaintiff, and determine whether there is a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678. When a plaintiff is proceeding *pro se*, I construe her allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

## III.    DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal

involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### A.    Claims Against Mr. Sipple

Mr. Caiby does not allege any acts in which Mr. Sipple engaged. Although he asserts that Mr. Sipple is the "Deputy Superintendent for Treatment," that allegation is not enough because generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quote omitted). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015).

If a plaintiff alleges a failure to supervise as a basis for liability, he must "identify a supervisory policy or practice that the supervisor failed to employ, and then prove that:

(1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 766 F.3d at 317. To set forth a claim for supervisory liability under the policy-and-practice strand of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Brown v. Muhlenberg Township*, 269 F.3d 205, 216 (3d Cir. 2001). "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.*

Mr. Caiby does not allege that Mr. Sipple participated in violating his rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in a subordinate's unconstitutional conduct. He also does not allege that Mr. Sipple established and maintained a policy, practice or custom which directly caused the alleged violation of Mr. Caiby's constitutional rights. Therefore, Mr. Caiby's claim against

Mr. Sipple is not plausible. However, I will give him leave to amend the claim if he can, in good faith, assert facts that might make Mr. Sipple personally liable.[2]

### B.    Claims Against Wellpath And Correct Care

There are no factual allegations in the Complaint describing any conduct engaged in by Correct Care or any of its personnel. On that basis alone, I will dismiss the claims against Correct Care for lack of personal involvement. *See Rode*, 845 F.2d at 1207.

In any event, Mr. Caiby's claims against both Wellpath and Correct Care fail for lack of detail. A private corporation under contract to provide medical services at a jail or prison "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003). Rather, to hold a private health care company like Wellpath or Correct Care liable for a constitutional violation under § 1983, a prisoner must allege facts showing the provider had "a relevant … policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Id.* at 583-84. There are no factual allegations in the

---

[2] To the extent Mr. Caiby asserts claims against Mr. Sipple in his official capacity, those claims are effectively against the Pennsylvania Department Of Corrections, Mr. Sipple's employer. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). However, the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court. Thus, I will dismiss Mr. Caiby's official capacity claim against Mr. Sipple with prejudice.

Complaint describing any policies or customs that either Wellpath or Correct Care established that guided the conduct of any individual who Mr. Caiby claims violated his rights. Thus, Mr. Caiby has not stated plausible claims against Wellpath or Correct Care, and I will dismiss those claims. Mr. Caiby will be granted leave to amend these claims.

### C.    Claims Against Jane/John Doe Medical Staff

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention." *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (cleaned up). "A serious medical need exists where 'failure to treat can be expected to lead to substantial and unnecessary suffering.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quote omitted).

A plaintiff alleges deliberate indifference "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is

delayed for non-medical reasons, [or] (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) (citation omitted). "[P]rison officials may not 'deny reasonable requests for medical treatment … when such denial exposes the inmate to undue suffering or the threat of tangible residual injury.'" *Durham v. Kelley*, 82 F.4th 217, 230 (3d Cir. 2023) (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017)). "Mere negligence, … even if it constitutes medical malpractice[,] falls short of deliberate indifference. So does mere disagreement between the prisoner and medical personnel over the proper course of treatment." *Montanez*, 154 F.4th at 141 (citations omitted).

In early March 2025, Mr. Caiby became violently ill after eating chili, and he posits that he may have been poisoned. He sought treatment at sick call but the attending medical staff did not examine him. I infer that he also received no treatment. He returned to his cell, where he presumably recovered because he does not describe any lasting effects of this illness. To the extent he bases his deliberate indifference claim on this incident, it is not plausible as pled.

The gastrointestinal illness Mr. Caiby describes does not rise to the level of a serious medical need. Additionally, although Mr. Caiby alleges he did not receive care, he does not include allegations suggesting that the failure to provide care was the result of deliberate indifference. "Deliberate indifference is a subjective standard that requires the official to have known of and disregarded an excessive risk to inmate health or safety. It

thus requires a showing more blameworthy than negligence or medical malpractice." *Id.* (internal citations omitted). To the extent this isolated failure to provide treatment, which does not appear to have resulted in lasting harm, was the result of inattention or inadvertence, it does not rise to the level of an Eighth Amendment violation. *See Plaza v. Presbury*, No. 22-4587, 2023 WL 4567718, at *3 (E.D. Pa. July 17, 2023). Mr. Caiby's Eighth Amendment claim based on this incident is therefore not plausible, so I will dismiss it without prejudice. I will grant him leave to amend this claim.

Mr. Caiby's claim about his thyroid eye disease is also not plausible. Not every complaint of inadequate prison medical care rises to the level of deliberate indifference. "Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Palakovic*, 854 F.3d at 227 (citation omitted). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* at 228 (cleaned up). "Nonetheless, there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements. For instance, prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment' of the inmate's condition." *Id.*

11

Mr. Caiby concedes that since he was diagnosed with thyroid eye disease, he was sent to Jefferson Hospital for regularly scheduled clinical maintenance visits due to thyroid eye disease and was also taken to Temple University Hospital for multiple MRIs and CT scans. Indeed, the allegations in the Complaint reflect regular hospital visits for related treatment and diagnostic testing. Because Mr. Caiby has received regular care for this condition, he cannot state a deliberate indifference claim against Jane/John Doe medical staff members based on deliberate indifference to his thyroid eye disease. I will therefore dismiss those claims with prejudice.

### D. Claims Against Jane/John Doe Medical Transport Staff

Mr. Caiby's Eighth Amendment claims alleging that he was not transported for medical care are not plausible as pled. There are no factual allegations in the Complaint alleging that Jane/John Doe were responsible for making decisions regarding the need for aftercare at Einstein Suburban, or that his inability to be transported on one isolated occasion for a clinical visit because of inoperable machinery constitutes deliberate indifference to his serious medical needs. This claim is conclusory and undeveloped and, as a result, not plausible. I will dismiss it without prejudice and give Mr. Caiby leave to amend it.

### E. Employment Related Claims

I understand Mr. Caiby to be asserting claims based on his reassignment from his job as a yard/vestibule worker to a job as a dishwasher in the kitchen, and on the alleged

failure of SCI Phoenix to pay him in accordance with the pay schedule in effect at the time. Neither claim is plausible. *First*, inmates do not have a constitutional right to employment during incarceration. *See James v. Quinlan*, 866 F.2d 627, 629 (3d Cir. 1989). Thus, Mr. Caiby cannot state a constitutional claim based on his transfer from one job to another. *Second*, the Thirteenth Amendment prohibits involuntary servitude, except as punishment for a crime for which a party has been duly convicted. U.S. Const. amend. XIII. In the context of a convicted prisoner, the courts have held that prisoners have no Thirteenth Amendment or liberty or property interest in payment for their work and may be lawfully compelled to work. *See, e.g., Serra v. Lappin*, 600 F.3d 1191, 1196 (9th Cir. 2010); *Murray v. Mississippi Dep't Corr.*, 911 F.2d 1167, 1167-68 (5th Cir. 1990). As the public record demonstrates that Mr. Caiby is a lawfully held convict, he has no federal constitutional claim based on failure to compensate him for his work. Thus, his claim based on SCI Phoenix's alleged failure to properly pay him is not plausible, and I will dismiss it with prejudice.

### F.    State Law Claims

Because I have dismissed Mr. Caiby's federal claims, I will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over state law claims for negligence, medical malpractice, or failure to pay wages. There also is not an independent basis for the Court's jurisdiction over those claims because Mr. Caiby lives in the same state as at least one defendant. *See* 28 U.S.C. § 1332. I will therefore dismiss the state law claims without

13

prejudice. If Mr. Caiby files an amended complaint, he may reassert these claims, if he so chooses, and I will screen them if there are claims over which the Court has jurisdiction that survive statutory screening.

## IV.    CONCLUSION

I will dismiss with prejudice official capacity claims, his prison employment related claims, and his Eighth Amendment deliberate indifference claims arising from the alleged failure to treat his thyroid eye disease. His remaining constitutional claims will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915A. His state law claims will be dismissed without prejudice for lack of subject matter jurisdiction. Mr. Caiby will be granted leave to file an amended complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002). An appropriate Order follows.

BY THE COURT:

*/s/ Joshua D. Wolson*

**JOSHUA D. WOLSON, J.**

May 21, 2026

14